UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL C. S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | No. EDCV 20-1148 AGR <br><br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff[1] filed this action on June 4, 2020.  The parties filed a Joint Stipulation that addressed the disputed issues.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner for the period beginning August 29, 2014 and remands for further proceedings consistent with this opinion.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 10, 11.)

# I.
# PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income benefits on June 7, 2017, and alleged an onset date of July 15, 2009. Administrative Record ("AR") 15. The applications were denied initially and on reconsideration. AR 15, 92-93, 142-43. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On August 26, 2019, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 38-73. On October 8, 2019, the ALJ issued a decision denying benefits. AR 9-26. On May 18, 2020, the Appeals Council denied review. AR 1-5. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. AR 17. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of residual headaches due to cerebral concussion; minimal Achilles tendinosis; plantar spur; fasciitis; osteoarthritis of the left knee; degenerative joint disease of the left hip; hearing loss; and obesity. AR 17.

The ALJ found that Plaintiff had the residual functional capacity to perform light work except that he was limited to sitting up to six hours per eight-hour workday; standing and walking up to six hours in an eight-hour workday; occasionally climbing ramps and stairs; and occasionally balancing, stooping, kneeling, crouching and crawling. He was precluded from jobs requiring acute hearing; climbing ladders, ropes and scaffolds; and concentrated exposure to hazards. He had a third grade level of

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

English.  AR 19.  The ALJ concluded that Plaintiff could not perform his past relevant work.  AR 24.  There were, however, jobs that existed in significant numbers in the national economy that Plaintiff could perform such as electronic worker, assembler, and shoe packer.  AR 25-26.

### C. Residual Functional Capacity

The residual functional capacity ("RFC") assessment measures the claimant's capacity to engage in basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471 (1986).  The RFC is a determination of "'the most [the claimant] can still do despite [the claimant's] limitations.'"  *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014) (citation omitted).

The ALJ rejected the opinions of the examining orthopedist and state agency physicians that Plaintiff was capable of medium work, and accepted the opinion that Plaintiff was precluded from heavy lifting.  "In light of the claimant's record that showed obesity, objective findings of degeneration, consistent treatment for pain including invasive treatment of injections, and positive examination findings of positive straight leg raising, weakness, and decreased sensation," the ALJ found "a range of light work to be more appropriate."  AR 23.[4]

Plaintiff contends that the ALJ erred in failing to find that he is limited to sedentary work.  Plaintiff also contends that he requires the use of a cane, but any such error would be harmless because the vocational expert testified that a claimant capable of light work, limited to standing/walking up to two hours in an eight-hour workday, requiring a cane for ambulation outside his immediate work area, and absent two days per month would be able to perform the job of electronics worker (DOT 726.687-010).  AR 67-69.

---

[4] The examining orthopedist did not review the MRIs of the lumbar spine in the record.  AR 465.

4

The ALJ cited a thorough orthopedic examination on September 12, 2011. AR 21, 23. Dr. Feiwell observed that Plaintiff complained of constant neck pain yet had no localized tenderness and basically full range of motion. Dr. Feiwell further observed that Plaintiff moved slowly and claimed he could not squat, yet examination of the lumbar spine revealed no palpable spasms and no neurological deficits. Dr. Feiwell opined that Plaintiff had no limitations due to his cervical spine and was precluded from heavy lifting due to his lumbar spine. AR 650. The ALJ found this opinion persuasive. AR 23. Plaintiff had reported to Dr. Feiwell that he lifted no more than 25 pounds.[5] AR 644. Subsequently, on December 8, 2011 and January 19, 2012, neurological examinations were unremarkable. His neck was supple and he had normal strength in his trapezius and sternocleidomastoid muscles. He had normal muscle tone, bulk and strength. AR 666-67, 670-71.

Medical records indicated, however, that Plaintiff's condition materially worsened in late 2014, before the date last insured of December 31, 2014. On August 29, 2014, Plaintiff presented with increased pain to his low back radiating down his left leg with tingling and numbness. On examination, Plaintiff had tenderness to palpation with muscle spasm, decreased range of motion, positive Kemp's sign and positive straight leg raising. Dr. Ahmed noted clinical findings for radicular pain, left greater than right. Dr. Ahmed recommended a cane for home use and an updated MRI for the lumbar spine. AR 752-53.

The MRI in September 2014 indicated straightening of the lumbar spine. At the L4-L5 level, MRI results indicated disc dessication, disc protrusion with effacement of the thecal sac, and disc material and facet hypertrophy causing bilateral neuroforaminal narrowing that effaced the left and right L4 exiting nerve roots. AR 755. After physical examination on October 10, 2014, Dr. Ahmed noted decreased lordosis, pain on range

---

[5] In a previous deposition on January 5, 2010, Plaintiff testified that he had pain with walking more than 15 minutes, lifting more than 25 pounds, and household chores. AR 630.

5

of motion testing, positive straight leg raising, muscle tightness and spasm of the paraspinal musculature with hypoesthesias at the L5 nerve distribution with incomplete sensory loss and weakness of the foot, left greater than right. AR 759. Dr. Ahmed observed that Plaintiff's condition had deteriorated and his physical examination indicated weakness in both legs with associated neurological deficit. Dr. Ahmed opined that Plaintiff was unable to participate in the work market at the time and was unlikely to change substantially in the next year with or without medical treatment. AR 764, 767-68. On December 19, 2014, Dr. Ahmed noted, in addition, hypoesthesia along the anterior lateral aspect of the foot and ankle, L5 and S1 dermatome level, bilaterally, and weakness in the big toe dorsi flexion and plantar flexion, bilaterally. AR 769.

The ALJ properly discounted Dr. Ahmed's conclusions that Plaintiff was "temporarily totally disabled" because the phrase is a term of art in workers compensation and means only that the claimant is unable to return to his job. The ALJ agreed that Plaintiff could not perform his past relevant work.

Nevertheless, the ALJ considered the objective clinical and diagnostic evidence underlying the reports, and concluded that this evidence was consistent with a residual functional capacity of a reduced range of light work. AR 24. The ALJ's conclusion is not supported by substantial evidence for the period beginning on August 29, 2014. To the extent the ALJ relied on the opinions of the examining physician and the state agency physicians, the examining physician reviewed only x-rays of the lumbar spine and did not apparently have the MRIs of the lumbar spine relied upon by Dr. Ahmed and other treating physicians. AR 465. Similarly, the state agency physicians do not cite the MRIs. In 2015, Plaintiff transitioned to a different primary care physician. On June 26, 2015, Plaintiff had trigger point tenderness to the bilateral paraspinal muscles and lumbar spinous process, decreased range of motion, and unstable gait.[6] AR 791,

---

[6] *See also* AR 771 (1/16/15), 773 (2/27/15), 785 (reporting difficulty walking for past week on 3/3/15), 791 (reporting left leg and back pain, worse when walking, and occasional numbness on 3/23/15).

796, 798, 800-01. Plaintiff was diagnosed with low back pain, radiculopathy in the lumbosacral region, and muscle spasm. AR 802. On March 15, 2017, Plaintiff presented with back pain radiating down the left leg. He had moderate pain during testing of the lumbar spine, positive straight leg raising, an antalgic gait and motor strength of 4/5 on the left. AR 806-07. An MRI of the lumbar spine on April 19, 2017 indicated, at L4-L5, mild bilateral facet degenerative changes and ligamentum flavum hypertrophy; mild to moderate disc dessication; 3-4 mm broad-based posterior disc osteophyte complex; and moderate bilateral lateral recess and neural foraminal narrowing. AR 811. On May 17, 2017, Plaintiff was sent to physical therapy for degenerative disc disease and sciatica. AR 816. Physical therapy was unsuccessful. Plaintiff was prescribed Tramadol and injections on April 19, 2018. AR 820.

On July 20, 2018, Plaintiff had a normal gait without a cane, and had mild difficulty transferring from the chair to standing, and from standing to the examination table. Plaintiff had no tenderness to palpation in the neck, back or legs. Plaintiff had a loss of 50% of lumbar range of motion in flexion and extension, but that loss was not considered a reliable predictor of disability. Straight leg raising was negative. Radiographs indicated degenerative changes with osteophyte formation throughout the lumbar spine and loss of disc height most prominent at L5-S1. Plaintiff was diagnosed with lumbar degenerative disc disease. AR 910-11. Plaintiff opted for a referral to pain management and injections. AR 911. An MRI of the lumbar spine on September 18, 2018, indicated degenerative disc disease at L2-L3 through L5-S1, and facet arthropathy at L4-L5 and L5-S1. Plaintiff had moderate left neural foraminal narrowing at L5-S1. AR 913. On October 4, 2018, Plaintiff had tenderness to palpation over the lumbar paraspinals bilaterally, and limited flexion and extension of the lumbar spine. Straight leg raising was positive. Plaintiff's gait was normal. Plaintiff was diagnosed with lumbosacral radiculitis and degenerative disc disease of the lumbar spine. He was prescribed bilateral steroid injections at L5-S1. AR 912-13.

Plaintiff further argues that he would qualify for benefits when he turned 55 years old, only 52 days after the ALJ's decision. "Where a claimant is within a few days or a few months of reaching an older age category (a 'borderline situation'), an ALJ has discretion, but is not required, to use the older age category." *Lockwood v. Comm'r*, 616 F.3d 1068, 1069 (9th Cir. 2010). "Although an ALJ is required by regulation to *consider* whether to use an older age category in a borderline situation, there is no requirement that the ALJ explain in her written decision why she did not use an older age category." *Id.* at 1070 (emphasis in original). The Ninth Circuit rejected the argument that the Commissioner's Hearings, Appeals, and Litigation Manual ("HALLEX") and Program Operations Manual System ("POMS") impose any additional legally enforceable duties upon an ALJ. *Id.* at 1072-73; *see also Barreras v. Saul*, 803 Fed. Appx. 70, 72 (9th Cir. 2020). Accordingly, Plaintiff has not shown error. The ALJ declined to use the older age category as "not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work." AR 25. Nevertheless, on remand, the ALJ is free to reconsider whether to use the older age category as appropriate.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed for the period beginning August 29, 2014 and this matter is remanded for further proceedings consistent with this opinion.[7]

DATED: July 1, 2021

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[7] Given the court's disposition, the court need not address the ALJ's treatment of Plaintiff's subjective allegations.

8